UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ATLANTIS MAHOGANY VAUGHN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:12-CV-01320 |
| v. ) | Judge Aleta A. Trauger |
| ) | |
| METROPOLITAN GOVERNMENT OF ) | |
| NASHVILLE AND DAVIDSON COUNTY, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM

The defendant, Metropolitan Government of Nashville and Davidson County ("Metro Nashville") has filed a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) (Docket No. 35), to which the plaintiff, Atlantis Mahogany Vaughn, filed a Response in opposition (Docket No. 49), and Metro Nashville filed a Reply (Docket No. 50, Ex. 1.). For the reasons stated herein, Metro Nashville's motion will be granted and Vaughn's claims will be dismissed with prejudice.

### BACKGROUND

**I.     Allegations**

According to her Amended Complaint (Docket No. 26), Vaughn has worked as a teacher at the Goodlettsville Middle School in Goodlettsville, Tennessee since 2006. She alleges that the school's Executive Principal, Dr. Sarah Moore, and/or the school administrators violated her rights under both federal and state in law multiple ways, including the following alleged actions: (1) "during [Vaughn's] tenure at Goodlettsville Middle School, Dr. Moore facilitated a hostile environment by her hostile and aggressive behavior . . . and singled out and harassed [Vaughn],"

1

causing Vaughn to suffer generalized anxiety disorder, bipolar disorder, and depression, for which Vaughn ultimately checked into a "day treatment program" and requested leave under the Family Medical Leave Act ("FMLA") on May 2, 2012;[1] (2) in March 2012, Vaughn requested and took sick leave to care for an ailing family member, but Dr. Moore later refused to pay Vaughn for the days Vaughn missed at work; (3) Vaughn was denied the "reasonable accommodation" of a transfer to another school in mid- to late-2012; (4) shortly after Vaughn returned to work on July 27, 2012, Dr. Moore verbally reprimanded Vaughn in her classroom, causing Vaughn's medical conditions to "become aggravated"; and (5) Dr. Moore unfairly reprimanded Vaughn for arriving late to her assigned classroom, causing Vaughn to suffer so much stress and anxiety that she requested and resumed her FMLA leave on August 6, 2012.

Vaughn alleges that, between October 13, 2012 and November 13, 2012, she submitted three separate grievance forms to Metro Nashville complaining of harassment and retaliation. On November 27, 2012, Vaughn met with a school system representative and asked him to investigate her grievances; on December 5, 2012, that representative allegedly told her that the offenses she had listed were not grievable and, therefore, required no action from the school system. On December 21, 2012, Vaughn filed a charge with the Equal Employment Opportunity Commission ("EEOC"), and on February 25, 2013, the EEOC issued her notice of right-to-sue letter.[2]

---

[1] In its Memorandum in support of the Motion for Judgment (Docket No. 36), Metro Nashville construes Vaughn's Amended Complaint as alleging actionable hostile conduct by Dr. Moore throughout Vaughn's tenure at the school from 2006 forward. In her Response, Vaughn does not dispute this construction of her Amended Complaint allegations.

[2] Vaughn filed a copy of her right-to-sue letter, which is dated February 25, 2013. (Docket No. 39, Ex. B.) In its Memorandum in support of the Motion for Judgment, Metro Nashville represents that Vaughn filed her complaint with the EEOC on December 21, 2012, the

2

In her Amended Complaint, Vaughn alleges claims for disability discrimination under the Americans with Disabilities Act ("ADA"), retaliation under the FMLA, and unspecified violations of the Tennessee Human Rights Act ("THRA").

## II. Procedural History

On December 21, 2012, Vaughn filed a *pro se* Complaint styled as an action under Title VII of the Civil Rights Act of 1964. (Docket No. 1.) The Complaint contained substantially the same details as the later-filed Amended Complaint, describing specific events between March 2012 and December 2012 relating to "discrimination, harassment, retaliation, intimidation, [and] threats of reprimand" by Dr. Moore, among other things. The original Complaint demanded, *inter alia*, $15,480 in back pay, additional compensatory damages of $500,000 for multiple reasons,[3] and $4 million in punitive damages. (*See* Compl. at p. 5.)

On January 29, 2013, attorney Andy Allman filed an appearance on behalf of Vaughn. With leave of court, Vaughn filed her Amended Complaint on June 24, 2013.

## III. Procedural History of Vaughn's Bankruptcy Case

On June 27, 2012, Vaughn, represented by counsel, filed a petition for Chapter 13 bankruptcy in this district. *See In re Atlantis Mahogany Vaughn*, No. 3:12-05887 (M.D. Tenn.

---

date that she filed this lawsuit. (Docket No. 36 at p. 5.) Vaughn does not dispute this representation by Metro Nashville. Indeed, after the court ordered Vaughn to produce a copy of the right to sue letter, which she had not filed with her *pro se* Complaint, Vaughn on January 23, 2013 requested an extension of time on the grounds that she was waiting for the Department of Justice to issue her the notice – impliedly acknowledging that she had filed her then-pending EEOC complaint before January 23, 2013. Therefore, the court will assume that Vaughn in fact filed her EEOC complaint on December 21, 2012.

[3]The Complaint sought damages for "disrespect, financial hardship, inflicting emotional distress, malicious use of authority, threats of reprimand, [and] failure to protect the education profession."

3

Bankr. filed June 27, 2012) ("Bankruptcy Case"). Vaughn's petition attached a schedule listing her "personal property," which included a line item (Item 21) for all "contingent and unliquidated claims of every nature . . . ." (*See* Docket No. 35, Ex. A, Chapter 13 Bankruptcy Petition in Bankruptcy Case, at Schedule B.) Vaughn's schedule, which Vaughn signed under penalty of perjury, marked "none" for Item 21 and did not otherwise reference the claims asserted in this lawsuit. On September 18, 2012, the Bankruptcy Court confirmed Vaughn's Chapter 13 plan. (*Id.*, Ex. B.) As summarized in the previous section, Vaughn allegedly filed grievances with Metro Nashville in October and November 2012, and (after allegedly receiving an unsatisfactory response) Vaughn filed her original Complaint and EEOC complaint on December 21, 2012, seeking over $4.5 million in compensatory and punitive damages.

At no time before Metro Nashville filed the instant Motion for Judgment in this case did Vaughn make any attempt to amend her bankruptcy schedule to list her claims as a potential asset. However, after Metro Nashville filed the instant Motion for Judgment in this case on September 18, 2013 – one year from the date on which the bankruptcy court had confirmed Vaughn's Chapter 13 plan – Vaughn filed an amended "Schedule B" on September 23, 2013 ("Amended Schedule B"). In the Amended Schedule B, Vaughn added the following language to Line 21:

> Employment claim/lawsuit vs. Metropolitan Government of Nashville and Davidson County.
>
> Debtor filed pro se lawsuit on December 21, 2012. She has since retained Andy Allman, Esq. to pursue the lawsuit. Debtor was unaware she had a cause of action when the Chapter 13 bankruptcy petition was filed on June 27, 2012.

(Docket No. 49, Ex. A.)

On October 10, 2013, Vaughn filed a Motion to Stay Proceedings pending a decision by

4

the Bankruptcy Trustee as to whether the Trustee would substitute itself in this case. (Docket No. 39.) Approximately two months later,[4] Mr. Allman reported to the court that the Bankruptcy Court had dismissed Vaughn's Chapter 13 application for noncompliance with the confirmed Chapter 13 plan. (Docket No. 47 (attaching Order of Dismissal).)

After the court lifted the stay (Docket No. 48), Vaughn responded to the pending Motion for Judgment. Vaughn's response simply reiterates that she filed an Amended Schedule B in response to the Motion for Judgment and that, two months later, her Chapter 13 case was dismissed for non-compliance. Vaughn's opposition does not cite to any legal authority, does not address the authorities and arguments raised by Metro Nashville in support of its Motion for Judgment, does not contest that it is procedurally appropriate to rule on the merits of a Rule 12(c) motion asserting judicial estoppel, introduces no evidence from or on behalf of Vaughn (aside from copies of the Amended Schedule B and the dismissal order in the Bankruptcy Case), makes no attempt to explain why Vaughn failed to amend her petition before September 23, 2013, and does not request the opportunity to present evidence on this issue. Therefore, the court construes Vaughn as conceding that it is appropriate to decide the merits of Metro Nashville's motion based on the existing record.

## **RULE 12(C) STANDARD**

---

[4]The court granted a stay and ordered Mr. Allman to report back to the court by November 1, 2013 concerning the Trustee's position. (Docket No. 42.) Mr. Allman apparently did not contact the Trustee directly. Instead, Mr. Allman filed a cursory status report on November 25, 2013, which stated that he was not aware of the Trustee's position (Docket No. 43). After the court ordered Mr. Allman to explain the steps he took to contact the Trustee (Docket No. 44), Mr. Allman indicated that he had contacted counsel for the Trustee, but not the Trustee himself (Docket No. 45). The court therefore ordered Mr. Allman to call the Trustee directly. (Docket No. 46.)

5

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards that govern a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Reilly v. Vadlamudi*, 680 F.3d 617, 622-23 (6th Cir. 2012).

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). To establish the "facial plausibility" as required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[threadbare] recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).

In ruling on a Rule 12(c) motion, the court may also consider, *inter alia*, public filings in

6

other cases. *See New England Health Care Employees Pension Fund v. Ernst & Young*, *LLP*, 336 F.3d 495, 501 (6th Cir. 2003); *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999). Both parties reference and rely upon docket entries in the Bankruptcy Case, which are public filings of which the court therefore takes judicial notice.

## ANALYSIS

### I.  Judicial Estoppel Standard

In a bankruptcy proceeding, a debtor must disclose all assets, including a potential cause of action. 11 U.S.C. § 521(a); *Eubanks v. CBSK Fin. Grp.*, *Inc.*, 385 F.3d 894, 897 (6th Cir. 2004); *Lewis v. Weyerhauser Co.*, 141 F. App'x 420, 424 (6th Cir. 2005) ("It is well-settled that a cause of action is an asset that must be scheduled under § 521(1).") "The disclosure obligations of consumer debtors are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." *Id.* (internal quotation marks and brackets omitted). "Moreover, [t]he duty of disclosure is a continuing one, and a debtor is required to disclose all potential causes of action." *Lewis*, 141 F. App'x at 424; *see also Harrah v. DSW, Inc.*, 852 F. Supp. 2d at 903 ("The debtor's disclosure obligation is a continuing one that does not end once the forms are submitted to the bankruptcy court. Therefore, a debtor must amend his financial statements once circumstances change.")

In a Chapter 13 bankruptcy, the bankruptcy estate includes property that "the debtor acquires after the commencement of the case but before the case is closed . . . ." 11 U.S.C. § 1306(a)(1). Thus, the debtor's obligation to disclose potential causes of action continues after the Chapter 13 plan is confirmed. *Harrah*, 852 F. Supp. 2d at 903; *In re Seafort*, 669 F.3d 662, 667 (6th Cir. 2012) ("§ 1306 adds to the 'property of the estate' property interests which arise

7

post-petition.").

The doctrine of judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase. *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010). This doctrine is utilized in order to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship. *Id.*

To support a finding of judicial estoppel in the bankruptcy context, the court must find that: (1) Vaughn assumed a position in this case that was contrary to the one that she asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) Vaughn's omission did not result from mistake or inadvertence. *White*, 617 F. 3d at 478. In determining whether Vaughn's conduct resulted from mistake or inadvertence, the court must consider whether: (1) she lacked knowledge of the factual basis of the undisclosed claims; (2) she had a motive for concealment; and (3) the evidence indicates absence of bad faith. In determining whether there was an "absence of bad faith," the court must look, in particular, at Vaughn's attempts to advise the bankruptcy court of her omitted claim. *Id.*

## II. Application

### A. Vaughn Assumed a Position Contrary to the One She Asserted and Maintained Under Oath in the Bankruptcy Case

In the Sixth Circuit, pursuing a cause of action that was not disclosed as an asset in a previous bankruptcy filing, even where the action was brought post-confirmation, creates an inconsistency sufficient to support judicial estoppel. *Lewis*, 141 F. App'x at 425 (where plaintiff filed an EEOC charge one month after bankruptcy plan was confirmed, failure to report cause of

8

Case 3:12-cv-01320 Document 53 Filed 01/22/14 Page 8 of 14 PageID #: 289

action in bankruptcy court supported judicial estoppel); *White*, 617 F.3d at 479; *Kimberlin v. Dollar General Corp.*, 520 F. App'x 312, 315 (6th Cir. 2013). "Applying judicial estoppel" under the test articulated in *White* "recognizes the importance of the bankruptcy debtor's affirmative and ongoing duty to disclose assets, including unliquidated litigation interests." *Kimberlin*, 520 F. App'x at 315.

Here, Vaughn does not dispute that her failure to disclose this cause of action in the Bankruptcy Case resulted in an inconsistency for judicial estoppel purposes. Indeed, notwithstanding her sworn representation in the Bankruptcy Case that she had no contingent assets, she filed an EEOC charge and filed the instant cause of action in December 2012. *See White*, 617 F.3d at 479 (holding that plaintiff's failure to disclose cause of action in sworn petition, "which essentially stated that the harassment claim did not exist, was contrary to [plaintiff's] later assertion of the harassment claim before the district court"). Vaughn does not dispute that she was aware of her causes of action before the Chapter 13 plan was confirmed on September 18, 2012, nor does she dispute that she had an obligation to (but did not) inform the bankruptcy court of the instant lawsuit when she filed it.

### B. The Bankruptcy Court Adopted Vaughn's Inconsistent Representation

Vaughn similarly does not dispute that the Bankruptcy Court adopted Vaughn's position (*i.e.*, that she did not possess the instant cause of action as a contingent asset) as part of a final disposition, namely the Chapter 13 plan. Indeed, had Vaughn disclosed the contingent asset at any point (even post-confirmation) the court could have taken account of this contingent asset, by providing full payment to her creditors in the event of any future recovery. *Kimberlin*, 520 F. App'x 315 ("A Chapter 13 plan may provide for the *vesting of property of the estate*, on

9

confirmation of the plan or *at a later time*, in the debtor or *in any other entity*.") (quoting 11 U.S.C. § 1322(b)(9)) (emphasis in original). In reliance on Vaughn's sworn representation, the Bankruptcy Court approved her Chapter 13 plan in September 2012 and did not provide therein for the possibility of recovery in this lawsuit. *See White*, 617 F.3d at 479 ("When a bankruptcy court – which must protect the interests of all creditors – approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position, that, in our view, is sufficient judicial acceptance to estop the party from later advancing an inconsistent position") (internal quotation marks and brackets omitted).

### C.  Vaughn Has Not Shown Why Her Failure to Disclose This Lawsuit Should be Excused.

The court's final inquiry is whether Vaughn's conduct resulted from mistake or inadvertence, which turns on whether (1) she lacked knowledge of the factual basis of the undisclosed claims; (2) she had a motive for concealment; and (3) the evidence indicates absence of bad faith.

First, it is self-evident that Vaughn knew the factual basis for her claim at least as of the date she filed her *pro se* Complaint on December 21, 2012, in which she herself recounted a course of conduct from March 2012 through December 2012. Moreover, Vaughn alleges a course of actionable conduct dating back to 2006, including allegations of specific actionable events from March 2012 through September 2012 (when the Bankruptcy Court approved her plan). Vaughn also alleges that she filed grievances with Metro Nashville in October and November 2012, just weeks after her plan was confirmed. Even assuming *arguendo* that, as she states under oath in the Amended Schedule B, Vaughn did not realize that she had a cause of action as of the date she filed her Chapter 13 petition on *June 27, 2012* (a representation that

10

strains credulity), that representation says nothing about when Vaughn *actually did* "realize" that she had a cause of action. At any rate, even granting Vaughn an unreasonably generous construction of the record, she necessarily knew of her cause of action on December 21, 2012, the date that she filed this action.

Second, Vaughn had a motive for concealment: if her claims became part of her bankruptcy estate, then any recovery would have gone toward paying Vaughn's creditors, rather than simply to paying Vaughn. Within the Sixth Circuit, this is sufficient to show motive for concealment. *White*, 617 F.3d at 479 (inferring motive to conceal from circumstances); *Kimberlin*, 520 F. App'x at 315 ("Because [the plaintiff] never amended her filings or otherwise disclosed the potential claim, she deprived the bankruptcy trustee, court, and creditors of any opportunity to consider possible options," thereby providing sufficient indicia of motive to conceal); *Lewis*, 141 F. App'x at 426 ("It is always in a Chapter 13 petitioner's interest to minimize income and assets"); *Thompson v. Davidson Transit Org.*, 725 F. Supp. 2d 701, 710 (M.D. Tenn. 2010) (finding that, where plaintiff's Chapter 13 plan obligated plaintiff to pay less than 100 percent of his claimed liabilities, "the plaintiff, as debtor, had a continuing motive to conceal and minimize his assets to reduce the potential pool for creditors").

Vaughn does not dispute Metro Nashville's position that, once the court determines that she had knowledge of the factual basis for her lawsuit and that she had a motive for concealment, the burden shifts to her to show why the record shows an "absence of bad faith" on her part. *See White*, 617 F.3d at 478 n. 4. As the Sixth Circuit has explained, the plaintiff can show an absence of bad faith by identifying her attempts to correct her initial omission. *Id.* at 480.

> Since judicial estoppel seeks to prevent parties from abusing the judicial process through cynical gamesmanship, the timing of [the plaintiff's] effort is also

11

> significant. Consequently, efforts to correct an omission that came before the
> Defendants filed their motion to dismiss are more important than efforts that came
> after the Defendants filed their motion to dismiss.

*White*, 617 F.3d at 480. The Sixth Circuit has also found that a partial amendment to Schedule B filed *after* facing a dispositive motion in the undisclosed lawsuit is insufficient to show an absence of bad faith:

> We will not consider favorably the fact that [the plaintiff] updated her initial filings after the motion to dismiss was filed. To do so would encourage gamesmanship, since [the plaintiff] only fixed her filings after the opposing party pointed out that those filings were inaccurate. *See Barger* [*v. City of Cartersville, Ga.*], 348 F.3d [1289,] 1297 [11th Cir. 2003] ("Allowing [a debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them.") Furthermore, [the plaintiff] did not adequately fix those filings but, instead, only updated a part of the them (so that they still did not reflect the estimated value of the lawsuit).

*White*, 617 F.3d at 481-82; *see also Harrah*, 852 F. Supp. 2d at 906 (dismissing claims that were not disclosed in bankruptcy case until after dispositive motion filed); *Swanigan v. Nw. Airlines, Inc.*, 718 F. Supp. 2d 917, 926 (W.D. Tenn. 2010) (finding bad faith, where plaintiff amended bankruptcy schedules "[o]nly after [the defendant] filed the instant motion to dismiss . . . , over one year after Plaintiff filed her bankruptcy petition, over ten months after the bankruptcy court confirmed Plaintiff's plan, and over seven months after initiating suit in this Court"). Also, in *White*, the Sixth Circuit found that the fact that the plaintiff filed her lawsuit the day after the plan was confirmed supported a finding of bad faith. *Id.* at 482. By contrast, in *Eubanks*, the Sixth Circuit found an absence of bad faith, where the plaintiff had made "numerous, effective attempts to correct the initial omission *before* (and after) the defendant in that case filed a motion

to dismiss based on a claim of judicial estoppel." *White*, 617 F.3d at 483 (discussing *Eubanks*).[5]

Furthermore, this court has found that the fact that a plaintiff-debtor's bankruptcy case has been dismissed does not negate application of judicial estoppel in a later-filed lawsuit that should have been disclosed in bankruptcy. *See Thompson*, 725 F. Supp. 2d at 710 (finding that the factors favoring a finding of bad faith "overwhelm[ed] the fact that plaintiff's Chapter 13 plan is no longer in place").

Here, Vaughn knew about her cause of action at least by December 21, 2012 – and likely before that date – and initially sought to recover over $4.5 million for her claims. Indeed, just weeks after her Chapter 13 plan was confirmed, she apparently filed grievances with Metro

---

[5]In *White*, the Sixth Circuit summarized the circumstances in *Eubanks* that demonstrated good faith by the plaintiffs in that case:

> [B]efore they filed their lender-liability lawsuit in state court, the plaintiffs in *Eubanks*: (1) orally informed the bankruptcy trustee of the creditors. In response, the trustee instructed (both orally and by a letter sent on the same day) their counsel to send him all of the documents regarding the claim. The plaintiffs then: (2) sent the trustee the requested documents concerning the claim two days later; (3) contacted the trustee on several occasions over the next several months to determine whether he intended to pursue the claim on behalf of the estate; (4) amended their schedule in the bankruptcy matter to include defendant as a creditor on Schedule F (although, they failed to amend their Schedule B to include the claim under potential assets); and (5) moved the bankruptcy court for a status conference on the issue of the lender liability claim . . . . Furthermore, *after* the plaintiffs filed the lender-liability lawsuit and after the defendant filed a motion to dismiss on the basis of judicial estoppel, the plaintiffs in *Eubanks*: (1) unsuccessfully moved to allow the trustee to be substituted for plaintiffs in the lender liability action after the trustee initially refused to abandon the claim in the bankruptcy proceeding (evident[ly], the trustee initially took actions to pursue the claim and then abandoned it); and (2) filed an amendment to their original bankruptcy petition to add the lender-liability claim to their bankruptcy Schedule B.

*White*, 617 F.3d at 477 n. 3 (citing *Eubanks*, 385 F.3d at 895-97).

13

Nashville concerning the undisclosed claims. At any rate, she filed this lawsuit just three months after the plan was confirmed, yet failed to disclose these claims to the bankruptcy court. Furthermore, and perhaps most significantly, Vaughn's cursory Response does not even contend – let alone identify supporting material in the record – that Vaughn in good faith failed to disclose her claims in this lawsuit before Metro Nashville filed the instant Motion for Judgment. Indeed, Vaughn does not even address, let alone attempt to distinguish, the relevant legal authority cited by Metro Nashville.

Ultimately, Vaughn demanded millions of dollars from Metro Nashville but withheld that information from the bankruptcy court and her creditors until Metro Nashville forced her hand in this lawsuit. Furthermore, even after Metro Nashville filed the instant motion and Vaughn disclosed the lawsuit to the Bankruptcy Court, Vaughn's late-filed Amended Schedule B still failed to list the potential value of her claims.

Under the circumstances presented, the court finds that Vaughn in bad faith failed to disclose this lawsuit in the Bankruptcy Case. Therefore, her claims are barred under the doctrine of judicial estoppel and will be dismissed.

## CONCLUSION

For the reasons stated herein, Metro Nashville's Motion for Judgment will be granted and Vaughn's claims will be dismissed with prejudice.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge